THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROGER and JANET STEGALL, husband and wife, and the marital community composed thereof,

        Plaintiffs,

    v.

HARTFORD UNDERWRITERS INSURANCE COMPANY, an insurance company,

        Defendant.

No.: C08-668MJP

HARTFORD'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: EXTRA-CONTRACTUAL CLAIMS AND ATTORNEY FEES

**NOTED: March 13, 2009**

**ORAL ARGUMENT REQUESTED**

## I. INTRODUCTION

In December 2006, Plaintiffs suffered a wind-related property loss. In January 2007, Plaintiffs accepted Hartford's payment for the actual cash value of their loss and for temporary repairs to their home. Plaintiffs contacted Hartford only once with questions about the claim, which Hartford explained. Before filing this lawsuit, Plaintiffs did not contact Hartford again and never asserted that Hartford's payment was insufficient to repair the damage. Instead, Plaintiffs filed suit on December 13, 2007. By admissions of Plaintiffs and their attorneys, Plaintiffs filed suit because they believed that the contractual suit

HARTFORD'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE: EXTRA-CONTRACTUAL CLAIMS AND
ATTORNEY FEES

Page 1

**Bullivant|Houser|Bailey PC**
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

1   limitation clause required that they file suit within one year of the loss.[1]

2       In fact, the suit limitation period is two years. So, instead of giving Hartford a

3   reasonable opportunity to adjust their insurance claim to correct any perceived deficiencies in

4   the claim adjustment and payment, Plaintiffs jumped the gun and sued Hartford, alleging

5   breach of contract and extra-contractual violations. In doing so, they have incurred

6   exorbitant attorney fees, which will only be paid if Plaintiffs convince the Court to excuse

7   their mistakes, including the mistake in filing suit in the first place, and to assign extra-

8   contractual liability to the claim-handling process. These are the only claims that remain

9   against Hartford, because the contract claim settled in mediation.

10       Plaintiffs are not entitled to recover their attorney fees under any theory of recovery.

11   Plaintiffs are not entitled to collect under *Olympic Steamship* because Hartford did not

12   dispute coverage and did not compel Plaintiffs to sue. Plaintiffs are not entitled to recover

13   attorney fees, or other damages, on their bad faith or Consumer Protection Act ("CPA")

14   claims because Hartford did not violate the Washington Administrative Code ("WAC"), did

15   not act unreasonably under the circumstances, and did not cause Plaintiffs any harm.

16   Plaintiffs are not entitled to recover on their claim for violation of the Washington Insurance

17   Fair Conduct Act ("WIFCA") because WIFCA became effective almost a year after

18   Plaintiffs' claim was paid and closed, and WIFCA does not apply retroactively.

19              **II.  RELIEF REQUESTED**

20       Hartford respectfully asks the Court to order that: **(1)** Hartford is not liable to

21   Plaintiffs for attorney fees under *Olympic Steamship*; **(2)** Hartford is not liable to Plaintiffs

22   for extra-contractual damages under the CPA, bad faith, or WIFCA; and **(3)** that Plaintiffs

23

24   [1] Plaintiffs filed a motion for partial summary judgment asking the Court to find that Hartford violated the Washington Administrative Code ("WAC") and was liable for extra-contractual damages for failure to

25   notify Plaintiffs of the suit limitation clause, which they thought was one year. Apparently, neither Plaintiffs nor their attorneys read the insurance policy. After Hartford incurred the expense of responding

26   to the motion, Plaintiffs withdrew the motion.

HARTFORD'S MOTION FOR PARTIAL SUMMARY       Page 2       **Bullivant|Houser|Bailey PC**
JUDGMENT RE: EXTRA-CONTRACTUAL CLAIMS AND                        1601 Fifth Avenue, Suite 2300
ATTORNEY FEES                                               Seattle, Washington 98101-1618
                                                             Telephone: 206.292.8930

1  extra-contractual claims based on WIFCA, CPA, and bad faith are dismissed, with prejudice.

2  **III. FACTS**

3  **A.    Plaintiffs' Claim and Hartford's Claim-Handling**[2]

4          In December 2006, Western Washington suffered the effects of a windstorm that

5  damaged many properties.  On December 15, Plaintiffs' home was damaged.  Because of the

6  volume of claims related to the storm, Hartford categorized the storm as a "catastrophe

7  storm."[3]  The relevant claim-handling facts are set forth in the following timeline:

8  **12/15/2006**    Plaintiffs notified Hartford of the loss.

9  **12/18/2006**    Hartford assigned adjuster Michelle Stevens to handle the claim.
                     Stevens called Plaintiffs, and assigned independent adjusters ("IAs")
10                   from Reid, Jones, McRorie & Williams, Inc. ("RJMW") to inspect the
                     damage.
11

12                   Chuck Fretwell of RJMW contacted Plaintiffs and scheduled the
                     inspection of their home.
13

14 **12/19/2006**    Plaintiffs notified Stevens that roofers were making temporary repairs.

15 **12/20/2006**    A Hartford supervisor reviewed the claim file and noted that the IA's
                     report was pending.
16

17 **12/22/2006**    Fretwell, along with adjuster Mark Olle, inspected Plaintiffs' home.[4]

18 **12/27/2006**    Plaintiffs told Stevens that Fretwell had inspected the damage.  Stevens
                     said she would follow up after she received Fretwell's report.
19

20                   Plaintiffs attempted to email photographs and the bill from the roofing
                     company to Fretwell.[5]
21

---

22 [2] Unless otherwise indicated, these facts are taken from Hartford's ciWeb claim notes (**Pages 4-8** to the
23 Declaration of Toni Y. Anders in Support of Hartford's Motion for Partial Summary Judgment ("Anders
   Decl.").

24 [3] Excerpt from Deposition Transcript of Michelle Stevens, 12:2-7 (**Page 10** to Anders Decl.).

25 [4] Declaration of Charles Fretwell, ¶ 2.

26 [5] December 27, 2006, email message from Plaintiffs to Fretwell (**Pages 17-18** to Anders Decl.).

| | | |
|---|---|---|
| 1 | **12/28/2006** | Plaintiffs obtained a $2,500 estimate for roof damage.[6] |
| 2 | | Fretwell responded to Plaintiffs' email message letting Plaintiffs know |
| 3 | | that he did not receive pictures or an estimate.[7] |
| 4 | **1/3/2007** | Plaintiffs sent email message to Fretwell apologizing that pictures did |
| | | not transmit and agreeing to get "other estimates" to Fretwell "in the |
| 5 | | next couple of days."[8] |
| 6 | **1/4/2007** | Plaintiffs' daughter emailed Fretwell with one photograph of Plaintiffs' |
| 7 | | damages.[9] |
| 8 | **1/18/2007** | A Hartford supervisor reviewed the claim file and sent a message to |
| 9 | | Stevens that she should contact Fretwell and "motivate" the estimate. |
| | **1/24/2007** | Stevens called Fretwell and left a message. |
| 10 | | |
| 11 | | Plaintiffs called regarding status of Fretwell's estimate and to say that |
| 12 | | they had an opportunity to schedule roof repairs. |
| 13 | | Stevens received and reviewed Fretwell's estimate, and called Plaintiffs |
| | | to explain estimate. Plaintiffs agreed to fax bill for temporary repairs. |
| 14 | | Stevens faxed estimate to Plaintiffs. |
| 15 | | Hartford paid Plaintiffs the actual cash value of the loss. |
| 16 | **1/25/2007** | Stevens received invoice and paid for temporary repairs. |
| 17 | **1/29/2007** | Plaintiffs called Hartford and spoke with Jessica Charmack. Charmack |
| 18 | | noted that Plaintiffs were upset and believed the check did not include |
| | | payment for all damages, including temporary repairs and $2,500 for |
| 19 | | roof repairs. Charmack told Plaintiffs that check for temporary repairs |
| 20 | | had been mailed. Charmack also said she would send a note to adjuster |
| | | to advise adjuster of Plaintiffs' concerns. |
| 21 | | Charmack sent a note to Stevens. Stevens called Plaintiffs and |
| 22 | | explained estimate again. Stevens explained depreciation and how |

---

23  [6] December 28, 2006, estimate from T&W Roofing & Siding, Co. (**Page 19** to Anders Decl.).

24  [7] December 28, 2006, email message from Fretwell to Plaintiffs (**Page 17** to Anders Decl.).

25  [8] January 3, 2007, email message from Plaintiffs to Fretwell (**Page 17** to Anders Decl.).

26  [9] January 4, 2007, email message from Janinne Armstrong to Fretwell (**Page 20** to Anders Decl).

| | | |
|---|---|---|
| 1 | | Plaintiffs could recover the depreciation holdback |
| 2 | | Stevens faxed replacement cost letter and estimate to Plaintiffs. |
| 3 4 | 1/30/2007 | Stevens called Plaintiffs again regarding depreciation holdback and recovery. |
| 5 6 | 12/12/2007 | Plaintiffs obtained an estimate from Alliance Restoration Services, Inc.[10] |
| 7 | 12/13/2007 | Plaintiffs sued Hartford. |

**B.**    **Post-Litigation Damage Investigation**

　　**1.**    **Attorney Fees**

On February 6 and February 25, 2008, counsel for Hartford requested information from regarding damages.[11]  On March 14, Plaintiffs' counsel provided a written settlement demand, which included a copy of the Alliance and RJMW estimates.[12]  At that time, Plaintiffs claimed attorney fees of $10,000.[13]  On March 27, Plaintiffs submitted notice to Hartford of their intent to file a claim under WIFCA.[14]  At this time, Plaintiffs claimed attorney fees were $14,805.  On August 21, 2008, before mediation, before any depositions were taken, and before any motions were filed, Plaintiffs' counsel notified Hartford's counsel that attorney fees were $59,900.[15]

---

[10] Alliance Estimate (**Pages 21-24 to Anders Decl.**).

[11] February 6, 2008, and February 25, 2008, email messages from Toni Anders to Timothy Bearb (**Pages 25 and 26 to Anders Decl.**

[12] March 14, 2008, letter, without attachments, from Timothy Bearb to Toni Anders (**Pages 27-30 to Anders Decl.**).  The March 14 letter is identified as an ER 408 communication.  Hartford is not offering this letter, or any other purported Rule 408 communication, into evidence for any of the uses prohibited by Rule 408.

[13] *Id.* at **Page 29**.

[14] March 27, 2008, letter from Timothy Bearb to Toni Anders, copied to the Insurance Commissioner (**Pages 31-40 to Anders Decl.**).

[15] August 21, 2008, letter from Michael Watkins to Toni Anders (**Pages 41-42 to Anders Decl.**).

1       **2.      Property Damage**

2           The Alliance estimate for repair of Plaintiffs' damages exceeded the estimate

3   prepared by Fretwell by approximately $3,800.[16]  In addition, the Alliance estimate did not

4   appear to include some of the damages at issue.  For example, there was no cost allocation

5   for an awning Plaintiffs claimed was damaged or for the garage flat roof.[17]  Because of the

6   discrepancies between Hartford's and Plaintiffs' estimates, Hartford retained Jim Perrault of

7   JRP Engineering to assist it in assessing Plaintiffs' damages.  On April 8, Hartford notified

8   Plaintiffs of its expert selection, and Perrault inspected the property on April 29, 2008.[18]  On

9   July 3, 2008, Perrault provided his written report.[19]

10          On July 14, Hartford requested Plaintiffs' permission to have a contractor of

11  Hartford's choice visit the insured's home and write an estimate for repairs based on

12  Perrault's engineering report.[20]  The Plaintiffs did not agree to Hartford's proposal.  Instead,

13  Plaintiffs proposed that either Hartford or Plaintiffs choose one of three contractors selected

14  by the other party.[21]  Hartford offered Plaintiffs three contractors from which to choose.[22]

15  Plaintiffs selected the company (McBride Construction) and the individual contractor for the

16  job,[23] and the inspection was scheduled for August 14, 2008.  Counsel received McBride's

17  estimate on September 10, 2008, the day of mediation.

18  _____

19  [16] The Alliance estimate totaled $16,436.12, which included $4,500 in taxes, insurance, permits and fees. Fretwell's estimate, without taxes, insurance, permits, and fees, totaled $8,086.39, for a difference of $3,849.78.

20

21  [17] *See* Alliance Estimate.

22  [18] Report from JRP Engineering (**Pages 43-57** to Anders Decl.).

23  [19] *Id.*

24  [20] July 14, 2008, email message from Toni Anders to Timothy Bearb (**Pages 58-59** to Anders Decl.).

25  [21] July 17, 2008, email message from Timothy Bearb to Toni Anders (**Page 58** to Anders Decl.).

26  [22] July 25, 2008, letter from Toni Anders to Timothy Bearb (**Page 60** to Anders Decl.).

    [23] July 28, 2008, letter from Timothy Bearb to Toni Anders (**Page 61** to Anders Decl.).

1   Based on Perrault's report, which included damages Plaintiffs had not discussed with

2   Hartford or Alliance, McBride's estimate for repairs exceeded the estimates from Alliance

3   and RJMW. The parties settled the property damage portion of this lawsuit in mediation

4   based, in part, on the McBride estimate.

5                       IV.  **ISSUES PRESENTED**

6       1.    Under *Olympic Steamship*, an insured is entitled to recover attorney fees if

7   coverage is at issue, and the insurer compels the insured to sue to recover benefits under the

8   policy. Hartford accepted coverage for Plaintiffs loss. And, Plaintiffs sued under the

9   mistaken belief that they had one year to do so. Should Plaintiffs recover attorney fees under

10  *Olympic Steamship*?

11      2.    Should the Court dismiss Plaintiffs extra-contractual claims because, as a

12  matter of law, (1) Hartford did not violate the WAC in its claim-handling; (2) Hartford

13  behaved reasonably under the circumstances; and (3) Plaintiffs were not harmed by

14  Hartford's actions?

15      3.    WIFCA became effective December 6, 2007, and applies prospectively only.

16  Plaintiffs' claim was paid and closed by January 30, 2007. Should the Court dismiss

17  Plaintiffs WIFCA claim because WIFCA was not effective during the handling of Plaintiffs's

18  claim.

19                      V.  **EVIDENCE RELIED UPON**

20      1.    Declaration of Toni Y. Anders in Support of Hartford's Motion for Partial

21  Summary Judgment, with **Pages 4-103**.

22      2.    Declaration of Charles Fretwell in Support of Hartford's Motion for Partial

23  Summary Judgment.

24                      VI.  **ANALYSIS**

25  A.   **Hartford is entitled to judgment as a matter of law.**

26      A party is entitled to summary judgment when there are no genuine issues of material

HARTFORD'S MOTION FOR PARTIAL SUMMARY          Page 7      **Bullivant|Houser|Bailey PC**
JUDGMENT RE:  EXTRA-CONTRACTUAL CLAIMS AND                1601 Fifth Avenue, Suite 2300
ATTORNEY FEES                                            Seattle, Washington 98101-1618
                                                         Telephone: 206.292.8930

1  fact.[24] The moving party has the burden of proving its opponent is not entitled to relief.[25]

2  After the moving party makes the initial showing, the burden shifts to the non-moving party

3  to set forth specific facts sufficient to rebut the moving party's contentions and to establish

4  the existence of genuine issues of material fact.[26] The facts are viewed in the light most

5  favorable to the non-moving party.[27] Hartford is entitled to judgment as a matter of law on

6  all claims.

7  **B.      Plaintiffs are not entitled to recover attorney fees under _Olympic Steamship._**

8            Under Washington law, an insured is entitled to "recoup attorney fees it incurs

9  because an insurer refuses to defend or pay the justified action or claim of the insured[.]"[28]

10  According to the Washington Supreme Court in _Olympic Steamship Co., Inc., v. Centennial_

11  _Insurance Co._, "an award of fees is required in any legal action where the insurer compels

12  the insured to assume the burden of legal action, to obtain the full benefit of his insurance

13  contract[.]"[29] An award of attorney fees is limited to those situations where the insured must

14  litigate coverage issues, not "where the controversy is merely over the amount of, or the

15  denial of, a claim."[30] "Coverage disputes include both cases in which the issue of any

16  coverage is disputed and cases in which 'the extent of the benefit provided by an insurance

17  contract' is at issue."[31]

---

18  [24] CR 56(c); _Clements v. Travelers Indem. Co.,_ 121 Wn.2d 243, 249, 850 P.2d 1298 (1993).

19  [25] _Hiatt v. Chevrolet Co.,_ 120 Wn.2d 57, 66, 837 P.2d 618 (1992).

20  [26] _Seven Gables Corp. v. MGM/UA Entm't Co.,_ 106 Wn.2d 1, 13, 721 P.2d 1 (1986).

21  [27] _Wilson v. Steinbach,_ 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

22  [28] _Olympic S.S. Co., Inc., v. Centennial Ins. Co.,_ 117 Wn.2d 37, 52, 811 P.2d 673 (1991).

23  [29] _Olympic Steamship_, 117 Wn.2d at 53.

24  [30] _Leingang v. Pierce County Med. Bur., Inc.,_ 131 Wn.2d 133, 146, 930 P.2d 288 (1997) (citing _Dayton v._

25  _Farmers Ins. Group_, 124 Wn.2d 277, 280-81, 876 P.2d 896 (1994)).

26  [31] _Leingang_, 131 Wn.2d at 147 (quoting _McGreevy v. Oregon Mut. Ins. Co.,_ 128 Wn.2d 26, 33, 904 P.2d 731 (1995)).

HARTFORD'S MOTION FOR PARTIAL SUMMARY          Page 8          Bullivant|Houser|Bailey PC
JUDGMENT RE:  EXTRA-CONTRACTUAL CLAIMS AND                     1601 Fifth Avenue, Suite 2300
ATTORNEY FEES                                                  Seattle, Washington 98101-1618
                                                              Telephone: 206.292.8930

1    Hartford did not dispute coverage or the extent of coverage available.  Hartford

2 accepted coverage and paid Plaintiffs' claim, with the exception of the depreciation

3 holdback, which was authorized by the following policy language:

4    You may disregard Paragraphs **a.** and **b.** above and
    make a claim for loss on an "actual cash value"

5    basis and then make a claim for any additional
    liability in accordance with this endorsement,

6    provided you notify us of your intent to do so within

7    180 days after the date of loss.[32]

8 Plaintiffs were entitled to collect the replacement cost at the time of the loss, without

9 deduction for depreciation.  However, if the cost to repair exceeded $500, Plaintiffs were

10 only entitled to the actual cash value amount of loss until the actual repair or replacement is

11 complete.[33]  Plaintiffs never notified Hartford that repairs were complete.  In fact, repairs had

12 not been completed by the time Plaintiffs filed suit.[34]

13    Moreover, Hartford did not *compel* Plaintiffs to file suit.  They filed suit under the

14 mistaken belief that they had to do so by December 15, 2007, when, in fact, the suit

15 limitation clause provided a two-year limitation period.  Timothy Bearb admitted on April

16 28, 2008, that Plaintiffs filed suit "to protect the Stegalls' rights vis a vis the one-year

17 statutory suit deadline[.]"[35]  Mrs. Stegall admitted that Plaintiffs did not contact Hartford

18 after they received the Alliance estimate because they thought they had to file suit by

19 December 15, 2007.  Significantly, she said they would not have filed suit if they knew they

20 had two years to do so:

21    Q.    After you got that estimate, why didn't you just send it to

22 [32] Excerpt from Endorsement HO 46 90 06 05 (**Pages 62-63** to Anders Decl.).

23 [33] *Id.*

24 [34] Plaintiffs also had not completed repairs by the time of their depositions, which took place after the
property damage claim settled in mediation.  Excerpt from the deposition of Roger Stegall, 16:4 -5 (**Page**
25 **65** to Anders Decl.)

26 [35] April 28, 2008, email message from Timothy Bearb to Toni Anders (**Page 66** to Anders Decl.).

1            Hartford instead of filing suit.

2     A.     I think I had called them and I did – I thought I had
                    called them and told them about the amount, but I don't
3                    know. I really –I think it had to do with time. It – suit
                    would be notification.

4

          . . .

5

    Q.     So you thought you had one year to file suit? But you
6                    know now it was two years, right?

7     A.     No, I still didn't know that until you just told me, if
                    that's what I have.
8

9     Q.     Okay. So the reason you didn't contact them with that
                    estimate is because you thought time was running out
                    and you needed to file suit.
10

11     A.     Right, exactly.

12     Q.     If you had known at the time that you actually had
                    another full year, would you have contacted them instead
13                    of filing suit?

14     A.     Yeah.[36]

15       Based on the indisputable evidence, there was no coverage dispute. In addition,

16 Plaintiffs' own mistake made them file suit, not any actions on Hartford's part in denying

17 that coverage existed for the loss, or the extent of coverage for the loss. Therefore, Hartford

18 is entitled to judgment that Plaintiffs are not entitled to attorney fees under *Olympic*

19 *Steamship*.

20 **C.**     **Plaintiffs are not entitled to recover damages on their extra-contractual damages.**

21     **1.**     **Hartford did not commit bad faith[37] or violate the CPA.**

22         **a.**     **Bad Faith and CPA, Generally**

23       An insurer's good faith duty to its insureds is often mistakenly called a "fiduciary"

24 ───────────────

[36] Excerpts from Deposition Transcript of Janet Stegall, 40:12 to 41:7 (**Page 69** to Anders Decl.).
25

[37] In his April 28, 2008, Timothy Bearb stated that Plaintiffs intended to withdraw their bad faith claim.
26 However, Plaintiffs never did so.

HARTFORD'S MOTION FOR PARTIAL SUMMARY       Page 10      **Bullivant|Houser|Bailey PC**
JUDGMENT RE: EXTRA-CONTRACTUAL CLAIMS AND                  1601 Fifth Avenue, Suite 2300
ATTORNEY FEES                                                 Seattle, Washington 98101-1618
                                                                Telephone: 206.292.8930

1  duty, although it is at most a "quasi-fiduciary" duty.  The difference is that a fiduciary

2  requires the one having the duty to put the interests of the beneficiary ahead of its own

3  interests.[38]  An insurer, by contrast, must give the insured's interests *equal* consideration, not

4  more consideration.[39]  That is the essence of the good faith obligation and differs from other

5  contractual relationships, in which a person may favor his own interests.  An insurer does not

6  commit bad faith unless its conduct is frivolous and unfounded.[40]

7         An insurer does not breach the covenant of good faith simply by violating the WAC.

8  Rather, a WAC violation "establishes a breach of duty," for purposes of a bad faith cause of

9  action.[41]  The insured must still prove the remaining elements, including harm and an

10  unreasonable, frivolous, unfounded violation, which are essential elements of a bad faith

11  claim.[42]

12         To establish a claim for violation of the CPA, a plaintiff must prove:  (1) unfair or

13  deceptive acts (2) occurring in trade or commerce, (3) which impact the public interest, and

14  (4) cause (5) injury to the plaintiff's business or property.[43]  A plaintiff must satisfy all five

---

[38] *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 389, 823 P.2d 499 (1992).

[39] *Id.*; *see also Tyler v. Grange Ins. Ass'n*, 3 Wn. App. 167, 177, 473 P.2d 193 (1970) (an insurer must give equal consideration to the insured's interests); *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 385-86, 715 P.2d 1133 (1986).

[40] *Ins. Co. of the State of Penn. v. Highlands Ins. Co.*, 59 Wn. App. 782, 786, 801 P.2d 284 (1990) ("ICSOP") (citing *Miller v. Ind. Ins. Cos.*, 31 Wn. App. 475, 642 P.2d 769 (1982)); *Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 560, 951 P.2d 1124 (1998).

[41] *Am. Mfrgs. Mut. Ins. Co v. Osborn*, 104 Wn. App. 686, 697-98, 17 P.3d 1229 (2001).

[42] *Id.* at 698; *Butler*, 118 Wn.2d at 389; *Coventry Assocs. V. Am. States Ins. Co.*, 136 Wn.2d 269, 276, 961 P.2d 933 (1998); *Griffin v. Allstate Ins. Co.*, 108 Wn. App. 133, 147, 29 P.3d 777 (2001); *Werlinger v. Clarendon Nat'l Ins. Co.*, 129 Wn. App. 804, 808, 120 P.3d 593 (2005); *ICSOP*, 59 Wn. App. at 786 (citing *Miller*, 31 Wn. App 475); *Kirk*, 134 Wn.2d at 5609; *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 486, 78 P.3d 1274 (2003).

[43] *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 785-785, 719 P.2d 531 (1986).

---

HARTFORD'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE:  EXTRA-CONTRACTUAL CLAIMS AND
ATTORNEY FEES

Page 11

Bullivant|Houser|Bailey PC
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

1  elements, and failure to prove even one element is fatal.[44]

2    An insured may establish an unfair or deceptive act by proving that the insured

3  violated the WAC. According to the Court of Appeals in *Anderson v. State Farm Mutual*

4  *Insurance Co.*, "[a] single violation of any of the provisions under 284-30-330 constitutes a

5  per se ***unfair or deceptive practice*** for purposes of a Consumer Protection Act violation."[45]

6  In *American Manufacturers Mutual Insurance Co v. Osborn*, where the court listed the

7  elements of a CPA claim and said that "[t]he insured may establish the ***first element*** by

8  showing a violation of any subsection of WAC 284-30-330.[46]

9      **b.**  **Hartford did not violate the WAC.**

10    The following WAC violations form the basis of Plaintiffs' remaining extra-

11  contractual claims:

12     (3) Failing to adopt and implement reasonable standards for
13       the prompt investigation of claims arising under
     insurance policies.

14     (4) Refusing to pay claims without conducting a reasonable
15       investigation.

16     . . .

17     (6) Not attempting in good faith to effectuate prompt, fair
     and equitable settlements of claims in which liability has
18       become reasonable clear. . . .

19     (7) Compelling insureds to institute or submit to litigation,
     arbitration, or appraisal to recover amounts due under an
20       insurance policy by offering substantially less than the
     amounts ultimately recovered in such actions or
     proceedings.[47]

21

---

22  [44] *Hangman*, 105 Wn.2d at 792; *Butler*, 118 Wn.2d at 389.

23  [45] 101 Wn. App. 323, 332, 2 P.3d 1029 (2000) (emphasis added).

24  [46] 104 Wn. App. at 687 (emphasis added).

25  [47] Excerpts from Plaintiffs Supplemental Discovery Responses (**Pages 72-74** to Anders Decl.). The
remaining alleged violations have been voluntarily abandoned (suit limitation) or disposed of by the
26  Court (failure to respond to communications).

HARTFORD'S MOTION FOR PARTIAL SUMMARY   Page 12   **Bullivant|Houser|Bailey PC**
JUDGMENT RE:  EXTRA-CONTRACTUAL CLAIMS AND       1601 Fifth Avenue, Suite 2300
ATTORNEY FEES                 Seattle, Washington 98101-1618
                      Telephone: 206.292.8930

1 | Plaintiffs also claim Hartford violated WAC 284-30-370, which provides:

2 | 
3 | > Every insurer shall complete investigation of a claim within
> thirty days after notification of the claim, unless such
> investigation cannot reasonably be completed within such time.
> All persons involved in the investigation shall provide
> reasonable assistance to the insurer in order to facility
> compliance with this provision.

4 | 
5 | 
6 | Plaintiffs cannot establish extra-contractual liability on the part of Hartford based on any of

7 | these WAC provisions.

8 | **First**, Plaintiffs have not presented any evidence that Hartford violated WAC 284-30-

9 | 330(3). Hartford's expert opined that Hartford's claims handling was prompt and

10 | responsive, including that Fretwell's inspection was appropriate for the information provided

11 | to him by Hartford and Plaintiffs.[48] Plaintiffs' expert concluded that "Hartford failed to

12 | implement reasonable standards for the prompt investigation of such a supplemental claim"

13 | because Plaintiffs contacted Hartford and complained of "potentially covered but

14 | unestimated damage."[49] Plaintiffs' expert did not support this statement with any evidence,

15 | and he did not identify what Hartford's investigation standards are. Moreover, Plaintiffs do

16 | not otherwise offer evidence of the reasonable standards.

17 | Complaints about the way a claim was handled or how payment was issued are

18 | insufficient evidence of an insurer's standards. In *American Manufactures Mutual Ins. Co. v.*

19 | *Osborn*, the insured complained that the insurer "dribbled payments" to her over a long

20 | period of time and, therefore, failed to implement reasonable standards for a prompt

21 | investigation of claims.[50] The court held that the claim for this WAC violation was properly

22 | dismissed because the insured failed to present evidence to support the claim, and that her

23 | 

---

24 | [48] Report of William Ballard(**Pages 76-85** to Anders Decl.).

25 | [49] Report of David Mandt (**Pages 86-100** to Anders Decl.).

26 | [50] 104 Wn. App. 686, 698, 17 P.3d 1229 (2001).

HARTFORD'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE: EXTRA-CONTRACTUAL CLAIMS AND
ATTORNEY FEES

Page 13

Bullivant|Houser|Bailey PC
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

1  complaints regarding payments was "not evidence of AAMI's investigation standards."[51]

2  Likewise, Plaintiffs complaints about how Hartford handled this particular claim are not

3  evidence of Hartford's investigation standards.

4       **Second,** Plaintiffs cannot establish a violation of WAC 284-30-330(4), because there

5  is no evidence that Hartford refused to pay Plaintiffs' claim, and because Hartford's conduct

6  was reasonable.  Hartford never refused to pay Plaintiffs' claim.  Hartford acknowledged

7  coverage, paid for temporary repairs, paid the actual cash value based on Fretwell's estimate,

8  and explained to Plaintiffs how they could recover the depreciation holdback.  Depreciation

9  was never recovered by Plaintiffs because they never notified Hartford that repairs had been

10  completed.

11       Even after Mrs. Stegall called Hartford on January 29, Hartford did not refuse to

12  make additional payments.  Stevens explained the estimate to Mrs. Stegall and believed Mrs.

13  Stegall understood.[52]  Stevens testified that she would have considered any additional

14  estimate Plaintiffs provided.[53]  However, Plaintiffs never provided an estimate until March

15  2008, months *after* they prematurely and unnecessarily filed suit.  Because Hartford never

16  refused to pay the claim, Hartford did not violate WAC 284-30-330(4).

17       Plaintiffs' expert opined that Hartford's failure to schedule a re-inspection of the loss

18  amounts to a failure to conduct a reasonable investigation.[54]   Hartford's expert disagrees.[55]

19  In fact, Hartford's expert opines that any supplemental damage could have been paid had the

20  insureds simply followed up with Hartford after January 29, 2007.  According to Stevens,

21  _____

  [51] *Id.*

22

  [52] Excerpts from Deposition Transcript of Michelle Stevens, 34:3 to 35:19 (**Pages 12-13** to Anders
23  Decl.).

24    [53] *Id.* at 39:9-18.

25    [54] *See* Mandt's report at **Page 94**.

26    [55] *See* Ballard's report at **Pages 80-81**.

HARTFORD'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE:  EXTRA-CONTRACTUAL CLAIMS AND
ATTORNEY FEES

Page 14

**Bullivant|Houser|Bailey PC**
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

1  scheduling a re-inspection was one of several options Hartford would have had had Plaintiffs

2  provided Hartford with the $2,500 estimate they obtained in 2007.[56]

3      Hartford's investigation shows that it promptly responded to the claim notice,

4  promptly assigned an IA to inspect the damage, and promptly paid for damages when

5  presented with estimates and bills. In the midst of a large volume of catastrophe claims and

6  over the holiday season, Plaintiffs claim was inspected and paid within 40 days from the date

7  of the loss. Plaintiffs were notified within 30 days the claim needed more time. Plaintiffs'

8  expert opined that:

9          They [Hartford] were very prompt in responding to telephone
           calls. They paid the amount of the estimate from Mr. Fretwell
10         in a timely manner. They paid the – so far as I can tell, they
           paid the temporary repairs in a timely manner. They had very
11         good, very quick internal communication from the adjuster to
           the supervisor and back again. The telephone message taken
12         from Ms. Charmack was channeled to Ms. Stevens in a very
           timely planner [sic], and she responded quite timely.
13
           So I think, in general, the timeliness of their handling was
14         good.[57]

15      In light of Hartford's expert opinion that Hartford's investigation was reasonable, and

16  all the things Plaintiffs' expert admitted Hartford did correctly, it cannot be said that

17  Hartford's investigation was anything but reasonable, especially when Hartford did not have

18  the benefit of the $2,500 estimate in Plaintiffs' possession. The opinion of Plaintiffs' expert

19  ignores the reciprocal nature of the duty of good faith[58] and the insureds' obligation to

20  cooperate with their insurer. Plaintiffs' expert opined that Plaintiffs had no duty to provide

---

21

22  [56] Stevens Deposition Testimony, 48:15 to 49:23 at **Pages 15-16**. There is some indication that in
    December 27, 2007, Plaintiffs attempted to send a bill and photographs to Fretwell. Hartford assumes the
23  "bill" was for temporary repairs and not the $2,500 estimate, because the $2,500 estimate was not
    obtained until the following day. However, there is no indication that the Plaintiffs ever sent the $2,500
24  estimate to Fretwell or Hartford, and Stevens testified that she never received it. Excerpts from Stevens's
    Deposition, ___

25  [57] Excerpts from Mandt's deposition, 73:10-20 (**Page 103** to Anders Decl.).

26  [58] RCW 48.01.030.

---

HARTFORD'S MOTION FOR PARTIAL SUMMARY          Page 15          **Bullivant|Houser|Bailey PC**
JUDGMENT RE: EXTRA-CONTRACTUAL CLAIMS AND                      1601 Fifth Avenue, Suite 2300
ATTORNEY FEES                                                 Seattle, Washington 98101-1618
                                                              Telephone: 206.292.8930

1    Hartford with a copy of the $2,500 estimate.  According to him, it was the "insured's

2    option."[59]  Consistent with Washington law, Hartford's expert opined that it was the

3    insured's responsibility to establish damages.  Even if Hartford overlooked a re-inspection,

4    that does not serve as the basis for a claim-handling violation when the insureds admit they

5    did nothing to bring the matter to Hartford's attention for resolutioin.

6         ***Third,*** for the reasons set for above, Plaintiffs cannot show that Hartford failed to

7    attempt in good faith to effective a prompt, fair, and equitable settlement of Plaintffs' claim.

8    Their own expert says payment was prompt.  The question is whether it was fair and

9    equitable.  Hartford did not violate WAC 284-30-330(6) as a matter of law because it paid

10   according to an estimate it received from an IA who visited the loss location.    It is against

11   the notion of good faith to hold Hartford liable for WAC violations when it relied upon an

12   uncontested estimate from an IA, when Plaintiffs could easily have provided Hartford with

13   evidence to suggest that there were deficiencies in that estimate.

14        ***Fourth,*** in Plaintiffs discovery responses, they cite to WAC 284-30-330(7) as a basis

15   for their extra-contractual claims.  However, they have not provided any evidence to support

16   their claim.  Their expert did not opine that Hartford violated this provision.  His opinions

17   were based exclusively on WAC 284-30-330(3) and (4).

18        Presumably, Plaintiffs will argue that because they recovered more at mediation than

19   was initially paid by Hartford, Plaintiffs allege that Hartford compelled them to litigate.  As

20   previously stated, Hartford did not compel Plaintiffs to sue; they sued by mistake, thinking

21   they were running out of time to do so.  In addition, under Washington law, "the difference

22   in the amount of the offer and the amount of the eventual settlement does not, by itself, show

23   that the insurer acted in bad faith or engaged in an unfair practice."[60]  "Rather, the issue turns

---

[59] Deposition of Mandt, 68:18-21 (**Page 102** to Anders Decl).

[60] *Anderson v. State Farm Mut'l Ins. Co.*, 101 Wn. App. at 335 (citing *Keller v. Allstate*, 81 Wn. App. 624, 633, 915 P.2d 1140 (1996)).

HARTFORD'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE:  EXTRA-CONTRACTUAL CLAIMS AND
ATTORNEY FEES

Page 16

Bullivant|Houser|Bailey PC
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

1  on whether the insurer had a reasonable justification for its low settlement offer."[61]

2      Here, that Hartford settled this claim in litigation for more than was initially estimated

3  by Frewell is not evidence of a WAC violation. Hartford's payment was reasonably based

4  on Fretwell's estimate. Plaintiffs had not provided a contradictory or supplementary

5  estimate, and seemed to understand and accept Stevens's explanation of Fretwell's estimate.

6  Moreover at the time McBride estimated damages according to the Perrault report, the

7  insureds had identified damage that they never before mentioned to Hartford or, apparently,

8  Alliance.[62]

9      ***Finally***, Plaintiffs have not provided any evidence to support their claim that Hartford

10  violated WAC 284-30-370. Under this provision, an insurer is not required absolutely to

11  complete its investigation with 30 days. Rather, an insurer is required to complete the

12  investigation within 30 days if it is reasonable to do so. Again, Plaintiffs' expert does not

13  allege a violation of this WAC provision.

14      Because of the catastrophic nature of the windstorm and resulting claims, Fretwell

15  was not able to get his report to Hartford by January 15, i.e. 30 days after the loss was

16  reported, so that Hartford could conclude its investigation. It was not reasonable for him to

17  do so because of the volume of claims being filed and investigated in Western Washington at

18  the time, the Christmas and New Year's holidays, and because, as late as January 4, 2007, he

19  was still communicating with Plaintiffs' by email regarding their damage.

20      Although it took Hartford 40 days to complete its investigation and pay the claim,

21  Hartford notified Plaintiffs within 30 days that more time was needed.

22          **c.    Hartford's conduct was reasonable.**

23      Even if Hartford violated the technical requirements of one of the WAC provisions

24

_____

25  [61] *Anderson*, 101 Wn. App. at 335 (citing *Keller*, 81 Wn. App. at 634-35).

26  [62] *See* Ballard Report at **Pages 79-80** and **84-85**.

HARTFORD'S MOTION FOR PARTIAL SUMMARY                    Page 17
JUDGMENT RE: EXTRA-CONTRACTUAL CLAIMS AND
ATTORNEY FEES

**Bullivant|Houser|Bailey PC**
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

1  identified above by committing procedural missteps, these missteps do not amount to an

2  unfair or deceptive act under the CPA or bad faith.  In *Insurance Co. of the State of*

3  *Pennsylvania v. Highlands Insurance Co. ("ICSOP")*, the appeals court found no CPA

4  violation under circumstances where the insurer was accused of not communicating in a

5  timely manner with the insured.[63]  The court said:

> Most of the acts the County identifies as pertinent to Highlands'
> behavior are policed by a standard of reasonableness.
> Communication must be reasonably prompt.  WAC 284-30-
> 330(2).  Claims investigations must be reasonable.  WAC 284-
> 30-330(4).  Affirming or denying claims coverage must occur
> within a reasonable time of proof of loss.  WAC 284-30-330(5).
> . . . Denial of a claim must be prompt and carry a reasonable
> explanation of the basis for the decision.  WAC 284-30-330(13).
> We noted earlier that Highlands' conduct was clumsy.
> Nevertheless, its behavior in sorting out responsibility and
> meeting the County's defense costs in this complicated case was
> not unreasonable.[64]

12  Eleven years later, the Court of Appeals held that "RCW 19.86.920 imports the

13  reasonableness standard into the CPA as a whole," even if the WAC does not contain a

14  specific reasonableness requirement:

> It is, however, the intent of the legislature that *this act shall not*
> *be construed to prohibit acts or practices which are reasonable*
> in relation to the development and preservation of business or
> which are not injurious to the public interest[.][65]

18  Based on this authority (and the plain language of 284-30-330(2)), both regulations carry a

19  reasonableness standard.

20         As explained above and as stated in Mr. Ballard's expert report, Hartford's actions

21  were reasonable.  Even Plaintiffs own experts identify many things Hartford did correctly

22  during the investigation.  What is unreasonable is the notion that Plaintiffs can obtain and

---

24  [63] 59 Wn. App. at 784.

25  [64] *Id.* at 789.

26  [65] *Osborn*, 104 Wn. App. at 699 (emphasis in original).

1    estimate that they believe establishes more damage than was estimated by Hartford, never

2    provide it to Hartford to establish the existence of unestimated damage, sue Hartford because

3    they misunderstood the suit limitation provision, and expect Hartford to pay six-figure

4    attorney fees on a claim that could have been resolved during the claim process.

5        Even if Stevens made a mistake by not immediately scheduling a re-inspection, that

6    mistake is not actionable.  The Washington Supreme Court recognizes that insurers

7    sometimes make mistakes:

8           Of course, insurance companies, like every other organization,
           are going to make some mistakes.  As long as the insurance
9           company acts with honesty, bases its decision on adequate
           information, and does not overemphasize its own interests, an
10          insured is not entitled to base a bad faith or CPA claim against
           its insurer on the basis of a *good* faith mistake.[66]

11

12   Stevens assumed, as was reasonable to do, that the insureds would provide copies of

     estimates.  By making this assumption, Stevens did not overemphasize Hartford's interests.
13
     Rather, she wrongly assumed Plaintiffs would cooperate in the claims process.  Plaintiffs had
14
     in their hands all the information they needed to justify, as they believed, their entitlement to
15
     more money.  They chose to only do it after they filed suit.
16
                    **d.    Hartford did not injure Plaintiffs.**
17
         Harm is an essential element of claims for violation of the CPA and breach of the
18
     covenant of good faith.[67]  Plaintiffs were not harmed by any conduct on Hartford's part.
19
     That Plaintiffs were unable to quickly repair the damage to their home is a function of timing
20
     and their own choices.  Plaintiffs testified that it was difficult to get a contractor to prepare an
21
     estimate because they were all busy with the storm.[68]  And, Plaintiffs chose to do nothing for
22

23   _____

     [66] *Coventry Assocs.* 136 Wn.2d at 280.
24
     [67] *Butler*, 118 Wn.2d at 389; *Coventry Assocs.*, 136 Wn.2d at 276; *Griffin*, 108 Wn. App. at 147;
25   *Werlinger*, 129 Wn. App. at 808.

26   [68] Excerpts from Janet Stegall's Deposition, 15:6-10 (**Page 68** to Anders Decl.).

1  almost a year to document the existence of additional damages.  They waited until they

2  believed (incorrectly) that they had no choice except to file suit.  Moreover, it is questionable

3  whether Plaintiffs would have quickly repaired their damage had they immediately received

4  all the money to which they claimed they were entitled.  At the time of their depositions,

5  after Hartford had settled the contract claim, Plaintiffs still had not completed the repairs.

6      Any harm Plaintiffs may have suffered could have been eliminated had Plaintiffs

7  allowed the claim process to take place.  Instead, they filed a premature lawsuit even Mrs.

8  Stegall admitted would not have been filed had they known they had two years to do so.

9  Any harm suffered by Plaintiffs is of their own making.

10 **D.    Plaintiffs are not entitled to recover under WIFCA because WIFCA was not
       effective during the handling of Plaintiffs' claim.**

11      WIFCA became effective on December 6, 2007, almost 11 after Hartford paid

12 Plaintiffs claim and closed the file.  Hartford paid Plaintiffs claim on January 24, 2007, and

13 closed the claim shortly thereafter.[69]  Courts addressing WIFCA have uniformly held it does

14 not apply retroactively.  These holdings are correct because "as a general proposition, courts

15 disfavor retroactivity."[70]  A statutory amendment "is presumed to operate prospectively

16 unless the Legislature indicates that it is to operate retroactively."[71]  WIFCA contains no

17 suggestion it was intended to apply in any manner but prospectively.

18      The presumption against retroactivity may be overcome only if (1) the statute itself

19 indicates it is to be applied retroactively, (2) the amendment is curative, or (3) the statute is

20 ───────────────

21 [69] Plaintiffs argue that the claim was reopened after litigation began.  This argument was not persuasive to
   the Court on Plaintiffs' motion for reconsideration and should not be persuasive here.  The claim was

22 never reopened for claim handling.  Stevens is still the handler, and testified that she did not perform any
   additional claim activities after it was closed.  The testified that the claim appears to have been reopened

23 for purposes of issuing payments during litigation.

24 [70] *Densley v. Dep't of Ret. Sys.*, 162 Wn.2d 210, 223, 173 P.3d 885 (2007) (citing *State v. T.K.*, 139
   Wn.2d 320, 329, 987 P.2d 63 (1999)); *See 1000 Virginia Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566,

25 584, 146 P.3d 423 (2006).

26 [71] *Densley*, 162 Wn.2d at 233.

───────────────

HARTFORD'S MOTION FOR PARTIAL SUMMARY          Page 20      **Bullivant|Houser|Bailey PC**
JUDGMENT RE:  EXTRA-CONTRACTUAL CLAIMS AND                  1601 Fifth Avenue, Suite 2300
ATTORNEY FEES                                              Seattle, Washington 98101-1618
                                                           Telephone: 206.292.8930

1  remedial.[72]  A statute is curative if "it clarifies or technically corrects an ambiguous

2  statute."[73]  Intent to clarify a statute may be manifested by the legislature's enactment of new

3  legislation soon after a controversy arose about interpretation of the statute said to be

4  clarified.[74]  A remedial statute "relates to practice, procedures and remedies" and does not

5  affect a substantive or vested right.[75]  None of these factors apply to WIFCA, which must be

6  assumed to apply only to claim handling occurring after its effective date.[76]

7      Because WIFCA did not become effective until long after Plaintiffs' claim was

8  closed, and WIFCA does not apply retroactively, Plaintiffs are not entitled to recovery under

9  WIFCA.

10                              VII.  **CONCLUSION**

11      Plaintiffs failed to give Hartford an opportunity to resolve their claim during the claim

12  process.  Plaintiffs filed suit in error, believing they were running out of time to do so.  These

13  mistakes on Plaintiffs' part resulted in this lawsuit and in attorney fees that should never

14  have been incurred.  Plaintiffs solely should be responsible for their own mistakes.

15      Plaintiffs' attorney fees are exorbitant in comparison to the simplicity of Plaintiffs'

16  claim and the fact that there was never a dispute as to coverage, and are all that stand in the

17  way of resolution of this matter entirely.  Plaintiffs will never be liable to pay these fees out

18  of pocket; the only chance of recovery of these fees is if Hartford pays them.  The Court

19  _____

20  [72] *Densley*, 162 Wn.2d at 233 (internal citations omitted).

21  [73] *McGee Guest Home, Inc. v. Dep't of Soc. & Health Servs.*, 142 Wn.2d 316, 325, 12 P.3d 144 (2000)
22  (quoting *In re F.D. Processing, Inc.*, 119 Wn.2d 452, 461, 832 P.2d 1303 (1992)).

23  [74] *McGee*, 142 Wn.2d at 325; *Johnson v. Cont'l W., Inc.*, 99 Wn.2d 555, 559, 663 P.2d 482 (1983).
    WIFCA also does not apply because Hartford did not deny Plaintiffs' claim or the payment of benefits,
24  unreasonably or otherwise.

    [75] *Densley*, 162 Wn.2d at 224 (internal citations omitted); *Miebach v. Colasurdo,* 102 Wn.2d 170, 181,
25  685 P.2d 1074 (1984).

26  [76] *Malbco Holdings, LLC, v. AMCO Ins. Co.*, 546 F. Supp. 2d 1130 (E.D. Wash. 2008).

HARTFORD'S MOTION FOR PARTIAL SUMMARY          Page 21        **Bullivant|Houser|Bailey PC**
JUDGMENT RE:  EXTRA-CONTRACTUAL CLAIMS AND                    1601 Fifth Avenue, Suite 2300
ATTORNEY FEES                                                 Seattle, Washington 98101-1618
                                                              Telephone: 206.292.8930

1 | should not find Hartford liable for these fees or for any extra-contractual damages because,

2 | as explained above, WIFCA does not apply, Hartford did not violate the WAC, behaved

3 | reasonably, and did not harm Plaintiffs.

4 | ## VIII. ORDER

5 | A proposed Order is attached.

6 | DATED this 17th day of February, 2009.

7 | BULLIVANT HOUSER BAILEY PC

8 |

9 | By ____/s/ Toni Y. Anders_____
   John A. Bennett, WSBA #33214

10 | E-Mail: john.bennett@bullivant.com
    Toni Y. Anders, WSBA #31238

11 | E-Mail: toni.anders@bullivant.com

12 | Attorneys for Defendant Hartford Underwriters
    Insurance Company, an Insurance Company

13 |

14 | 11267687.1

15 |

16 | **CERTIFICATE OF SERVICE**

17 | I hereby certify that on February 17, 2009, I electronically filed the foregoing, Declaration of Toni Y.

18 | Anders in Support and Declaration of Chuck Fretwell with the Clerk of the Court using the CM/ECF system which

will send notification of such filing to the persons listed below:

19 |

20 | Michael T. Watkins
    Timothy A. Bearb
    Law Offices of Michael T. Watkins

21 | 1100 Dexter Ave. N
    Seattle, WA 98109
    michael@mtwlawfirm.com

22 | timothy@mtwlawfirm.com

23 |

24 | _____
    Kimberly A. Fergin

25 |

26 |

HARTFORD'S MOTION FOR PARTIAL SUMMARY
JUDGMENT RE: EXTRA-CONTRACTUAL CLAIMS AND
ATTORNEY FEES                    Page 22    **Bullivant|Houser|Bailey PC**
                                            1601 Fifth Avenue, Suite 2300
                                            Seattle, Washington 98101-1618
                                            Telephone: 206.292.8930

THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROGER and JANET STEGALL, husband and wife, and the marital community composed thereof,

               Plaintiffs,

    v.

HARTFORD UNDERWRITERS INSURANCE COMPANY, an insurance company,

               Defendant.

No.: C08-668MJP

ORDER GRANTING HARTFORD'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE EXTRA-CONTRACTUAL CLAIMS AND ATTORNEY FEES

    Defendant moved for partial summary judgment regarding extra-contractual claims and attorney fees, and the parties submitted the following for the Court's consideration:

    1.    Hartford's Motion for Partial Summary Judgment Re: Extra-Contractual Claims and Attorney Fees;

    2.    Declaration of Toni Y. Anders in Support, w/exhibits;

    3.    Declaration of Chuck Fretwell;

    5.    _____

    6.    _____

ORDER GRANTING HARTFORD'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

Page 1

**Bullivant|Houser|Bailey PC**
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

1    The Court having reviewed the submissions of the parties, it is hereby ORDERED

2  that Plaintiffs are not entitled to collect attorney fees under *Olympic Steamship*. It if further

3  ORDERED that:

4    2.    Hartford did not commit bad faith;

5    3.    Hartford did not violate the CPA;

6    4.    The Washington Insurance Fair Conduct Act does not apply because

7  Plaintiffs' insurance claim was concluded before the Act became effective, and the Act

8  applies prospectively only; and

9    5.    All of Plaintiffs' extra-contractual claims are dismissed, with prejudice.

10    DATED this _____ day of _____, 2008.

11

12

13    _____

    JUDGE MARSHA J. PECHMAN

14

15  11272020.1

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING HARTFORD'S MOTION FOR PARTIAL    Page 2    Bullivant|Houser|Bailey PC
SUMMARY JUDGMENT                                          1601 Fifth Avenue, Suite 2300
                                                          Seattle, Washington 98101-1618
                                                          Telephone: 206.292.8930